UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORENO, ET AL., <br><br> Plaintiffs, <br> v. <br><br> USG CORPORATION, ET AL., <br><br> Defendants. <br> _____ | Civil No: 06-CV-2196-B(PCL) <br><br> **ORDER (1) DENYING IN PART, GRANTING IN PART DEFENDANT USG CORPORATION'S MOTION TO DISMISS THE FIRST AND SECOND CAUSES OF ACTION FROM PLAINTIFFS' COMPLAINT; AND (2) GRANTING PLAINTIFFS THIRTY DAYS TO AMEND THEIR COMPLAINT ACCORDINGLY** |

**I.  INTRODUCTION**

Before this Court is Defendant USG Corporation's ("USG") Motion to Dismiss the First and Second Causes of Action from Plaintiffs' Complaint filed on November 13, 2006. (Doc. No. 7.)  For the reasons set forth below, the Court (1) **GRANTS** USG's Motion to Dismiss the First Cause of Action for not adequately pleading that manufacturer Defendant Coe Manufacturing Company ("Coe") conveyed knowledge of the design, installation, and

attachment of the guards onto the power press to employer USG as required under California Labor Code § 4558(c); (2) **GRANTS** Plaintiffs **thirty (30) days** from the date of the filing of this Order to amend their complaint accordingly; (3) **DENIES** USG's Motion to Dismiss the First Cause of Action on all other grounds presented by USG; and (4) **DENIES** USG's Motion to Dismiss the Second Cause of Action.

**II.      BACKGROUND**

Plaintiffs Gilbert Moreno and his wife Angela Moreno filed the present suit on October 4, 2006, alleging (1) negligence against USG and Coe, (2) strict liability in tort against USG and Coe, and (3) loss of consortium. (Doc. No. 1.) The Court has jurisdiction under diversity of citizenship. (Id. at 1 - 2.) Plaintiffs allege that G. Moreno was assigned by his employer USG to the #1 Board Line machine, which was designed, manufactured, and distributed by Coe. (Id. at 2.)

On November 13, 2006, Defendant USG filed the present Motion to Dismiss the First and Second Causes of Action from Plaintiffs' Complaint, which are Negligence and Strict Liability in Tort against USG. (Doc. No. 7.)

**III.     DISCUSSION**

    **A.      STANDARD OF LAW**

        **1.      Motion to dismiss for failure to state a claim**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed with prejudice if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiff. See Abramson v.

Brownstein, 897 F.2d 389, 391 (9th Cir. 1990). Furthermore, a court should not grant a Rule 12(b)(6) motion without leave to amend unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir. 1984)). "However, material which is properly submitted as part of the complaint may be considered." Id. (citing Amfac Mortgage Corp. v. Ariz. Mall of Tempe, 583 F.2d 426, 429 - 30 (9th Cir. 1978)). In addition, a court may, on a motion to dismiss, take judicial notice of facts outside the pleadings "to matters of public record." Mack v. S. Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

**B.     ANALYSIS**

"Where a federal court has jurisdiction by virtue of diversity of citizenship of the parties, the court must follow state law" of the forum state. Burns v. Int'l Ins. Co., 919 F.2d 1422, 1424 (9th Cir. 1991). Here, this Court has jurisdiction under diversity of citizenship and should therefore apply California law to the underlying causes of action.

### 1.     First cause of action for negligence against USG

California Labor Code § 3602 generally provides that the benefits provided by the workers' compensation system constitute an employee's exclusive remedy with respect to his employer for injuries suffered in the course and scope of employment. See CAL. LAB. CODE § 3602 (West 2003).

Plaintiffs assert their claims under the "power press" exception to Section 3602 given in California Labor Code § 4558(b):

> An employee, or his or her dependents in the event of the employee's death, may bring an action at law for damages against the employer where the employee's injury or death is proximately caused by the employer's knowing

> removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death.

Id. at § 4558(b). Here, "power press" is defined as "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." Id. at § 4558(a)(4).

The California Supreme Court has construed "die" to generally share two pertinent characteristics: (1) "impart[ing] form to the material by impact or pressure *against* the material, rather than *along* the material;" and (2) "impart[ing] to the material some version of the die's own shape." Rosales v. Depuy Ace Med. Co., 991 P.2d 1256, 1259 (Cal. 2000). These two characteristics are "logically related, since the die, acting by impact against the material, can only alter the form of the material where it impacts it, necessarily leaving an impression or cutout of its own shape (unlike a linear cutting blade that, moving along the surface of the material, can be directed to cut out any desired shape)." Id. at 1259 - 60.

The first characteristic, impact or pressure against or through the material, "particularly describes dies used in presses and hence limits the term as used in section 4558, subdivision (a)(4)." Id. at 1260. However, because "the first characteristic necessarily implies the second," courts may use the second characteristic as "a test of whether a tool is a die within the meaning of section 4558, subdivision (a)(4)." Id.

### a. "Power press" exception is not precluded by Plaintiffs' assertion that G. Moreno was assisting in cleaning debris from the #1 Board Line at the time of his injury

USG argues that the power press exception does not apply in this action, because the #1 Board Line was not operating as a power press at the time of G. Moreno's alleged injuries, as G. Moreno asserts that he was cleaning debris from the machine at that time. Doc. No. 7 at 6.) USG points to Rosales, in which the California Supreme Court

interpreted Section 4558 as follows:

> Section 4558 applies only to injuries proximately caused by the employer's knowing removal of, or failure to install, a point of operation guard on a power press. (§ 4558, subd. (b).) An injury caused by the operation of a machine that *could* operate as a power press, but was not so operating at the time of injury, would not be proximately caused by the employer's removal of, or failure to install, a point of operation guard on a power press. As the evident intent of the statute was to provide a greater remedy for those workers injured in power *press* accidents, moreover, it would make no sense to interpret the statute as applying, as well, when the worker was operating, say, a power *lathe*, even if the same machine could, under other circumstances, have been used as a press. That the undisputed facts demonstrate the V-notching tool is not a die was, therefore, sufficient to support the grant of summary judgment to defendant.

Rosales, 991 P.2d at 1261.

Plaintiffs plead in their Complaint under their first cause of action:

> 10. Plaintiff, GILBERT MORENO, is informed and believes, and based thereupon alleges, that the #1 Board Line is a material forming machine that manufactures gypsum board by forming the gypsum board with tools that impart shape to the materials by pressing against or through the materials. Gypsum board is a material that is used in the manufacture of other products. The # 1 Board Line has a wet end and a dry end. At the wet end of the process, the materials which comprise the gypsum board are manufactured by tools that impart shape to the materials by pressing and impacting against the materials and involves the process of punching, stamping and extruding and therefore constitute a power press which utilizes a die for the use in the manufacture of gypsum board as these terms are defined in California Labor Code § 4558. During the manufacturing process, the materials that become the gypsum board are shaped, extruded and formed while proceeding on the line. As part of the process of shaping, extruding and forming the gypsum board, the materials are moved along by energized conveyor belts. Along the conveyor belts, there are motorized pulleys which allow the materials to move on the line and are an integral part of the manufacturing process of shaping, extruding and forming the gypsum board.

(Doc. No. 1 at 3.)

Accepting all material allegations in the Complaint and all reasonable inferences as true, as required under FRCP 12(b)(6), the Court must accept that "the #1 Board Line is a material forming machine that manufactures gypsum board by forming the gypsum board with tools that impart shape to the materials by pressing against or through the materials." (Id.) Therefore, the Court finds that Plaintiffs adequately plead facts to support its assertion that the #1 Board Line is a power press.

This case can be distinguished from Rosales, because the California Supreme Court there was discussing the case in which the machine is not a power press (e.g., a power lathe) but has the capacity to function as a power press. As Plaintiffs have adequately plead facts to support its assertion that the #1 Board Line is a power press and not another kind of machine, the Supreme Court's reasoning in Rosales would not apply here.

Furthermore, Plaintiffs plead the following in their Complaint under the first cause of action:

> 13. On April 16, 2006, at or near 6:30 p.m., the point of operation guard for the motorized pulley had been removed by the machine man of the #1 Board Line in order clean debris that had accumulated on the energized pulley. At that time and place, plaintiff, GILBERT MORENO, arrived and began assisting the machine man who had moved the guard aside in order to clean the debris. In the process of assisting the machine man, plaintiff's left arm became entangled in the energized pulley, resulting in a degloving injury and amputation of plaintiff's dominant left arm above the elbow.

(Doc. No. 1 at 4.) Here, Plaintiffs assert that G. Moreno was "assisting the machine man" who was "clean[ing] the debris" at the time of his injuries. The Court finds that these facts as plead could still support a finding that the #1 Board Line was operating as a power press even during the debris cleaning process, as plaintiffs can reasonably argue that cleaning is a regular part of power press machine operation.

Accordingly, the Court **DENIES** USG's Motion to Dismiss the First Cause of Action of Negligence on these grounds.

### b. Plaintiffs adequately plead the point of operation guard within the First Cause of Action

USG argues that Plaintiffs failed to factually allege within the First Cause of Action "what actually constitutes the point of operation guard" that was allegedly removed at the time of injury. (Doc. No. 7 at 7.) However, Plaintiffs plead under the first cause of action that "at the point of operation of the wet end of the #1 Board Line where the material forming machine is shaping, extruding, and forming the materials into gypsum board, there is a motorized pulley." (Doc. No. 1 at 3.) They further plead that there was "a point of

operation guard designed to protect workers, including plaintiff, from coming into contact with the motorized pulley." (Id.) Moreover, Plaintiffs describe the point of operation guard in more detail within its Second Cause of Action: that the modified version "was a one piece point of operation guard approximately 5' long and 2' wide" and the original version "was a two piece guard." (Doc. No. 1 at 6.) The Court finds that Plaintiffs have adequately plead the point of operation guard here and **DENIES** USG's Motion to Dismiss the First Cause of Action on these grounds.

### c. Plaintiffs adequately plead USG's knowing removal of the point of operation guard and its specific authorization of this removal under conditions known by USG to create a probability of serious injury or death

California Labor Code § 4558(a)(6) (West 2003) states that "specifically authorized" means "an affirmative instruction issued by the employer prior to the time of the employee's physical injury or death, but shall not mean any subsequent acquiescence in, or ratification of, removal of a point of operation safety guard."

Plaintiffs plead in the Complaint under the first cause of action:

> On April 16, 2006, and for some time prior thereto, defendants, USG CORPORATION, and DOES I through XX, and each of them, had used the hereinabove described material forming machine with a point of operation guard that was not properly secured or anchored so as to allow the guard to be removed, thereby exposing workers using the material forming machine to the risk of serious injuries.
>
> 12. Plaintiff is informed and believes, and based thereupon alleges, that prior to April 16, 2006, defendants, USG CORPORATION, and DOES I through XX, and each of them, had a custom of practice of removing or rendering the point of operation guards dysfunctional in order to clear accumulated debris from the # 1 Board Line while the line was energized without following a lock out/tag out procedure. Plaintiff is further informed and believes, and based thereupon alleges, that defendants, USG CORPORATION, and DOES I through XX, and each of them, by and through their supervisors, foreman and plant managers, would discourage employees from shutting down the # 1 Board Line in order to clean accumulated debris.

(Doc. No. 1 at 3 - 4.) Here, Plaintiffs assert that USG had "a custom and practice" of removing the point of operation guards while clearing accumulated debris "without

following a lock out/tag out procedure" "to the risk of serious injuries," such as G. Moreno's injuries here.

From this, the Court finds that Plaintiffs have adequately plead facts to support their assertion that USG knowingly and specifically authorized the removal of the point of operation guard to create a probability of serious injury or death. Therefore, the Court **DENIES** USG's Motion to Dismiss the First Cause of Action on these grounds.

### d. Plaintiffs did not adequately plead that the manufacturer provided by specification for the attachment of the guards and conveyed knowledge of the same to the employer.

Under California Labor Code § 4558(c) (West 2003),

> No liability shall arise under this section absent proof that the manufacturer designed, installed, required, or otherwise provided by specification for the attachment of the guards and conveyed knowledge of the same to the employer. Proof of conveyance of this information to the employer by the manufacturer may come from any source.

Plaintiffs plead in their Complaint under the first cause of action that Defendant Coe designed, manufactured, and distributed the #1 Board Line "with a point operation guard designed to protect workers, including plaintiff, from coming into contact with the motorized pulley." (Doc. No. 1 at 3.) Plaintiffs further plead that employer USG used the #1 Board Line "with a point of operation guard that was not properly secured or anchored so as to allow the guard to be removed" and "would discourage employees from shutting down the #1 Board Line in order to clean accumulated debris" with the guard removed. (Id. at 4 - 5.)

The Court finds that Plaintiffs did not adequately plead that manufacturer Coe conveyed knowledge of the design, installation, and attachment of the guards onto the power press to employer USG as required under California Labor Code § 4558(c). The Court therefore **GRANTS** USG's Motion to Dismiss the First Cause of Action on these grounds and **GRANTS** Plaintiffs **thirty (30) days** from the date of the filing of this Order to amend their complaint accordingly.

### 2. Plaintiffs' second cause of action for Strict Liability in Tort against USG

Under California law, "[i]n a strict liability action based on defective design, a product is defective either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the benefits of the challenged design do not outweigh the risk of danger inherent in such design." Merrill v. Navegar, Inc., 28 P.3d 116, 125 (Cal. 2001) (internal quotations omitted).

Plaintiffs plead in their Complaint as to the Second Cause of Action that USG was "engaged in the business of manufacturing, designing, fabricating, maintaining and repairing, replacement component parts for the material forming machines used by defendants, including the point of operation guards without safety interlock devices." (Doc. No. 1 at 6.) Plaintiffs further asserted that these guards did not have a "safety interlock device which would have de-energized the material forming machine if the point of operation guard was removed or otherwise altered," which "would have protected workers from coming into contact with energized equipment at the point of operation." (Id.) Plaintiffs concluded that this failure "rendered the product defective in both its manufacture and design" and made it "unsafe for its intended use when used in a reasonably foreseeable manner." (Id. at 6 - 7.)

The Court therefore finds that Plaintiffs adequately plead facts to support their cause of action for strict liability in tort against USG, i.e., that the #1 Board Line failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Accordingly, the Court **DENIES** USG's Motion to Dismiss the Second Cause of Action.

### IV. CONCLUSION

For the reasons set forth above, the Court (1) **GRANTS** USG's Motion to Dismiss the First Cause of Action for not adequately pleading that manufacturer Defendant Coe Manufacturing Company ("Coe") conveyed knowledge of the design, installation, and attachment of the guards onto the power press to employer USG as required under California Labor Code § 4558(c); (2) **GRANTS** Plaintiffs **thirty (30) days** from the date of the filing of this Order to amend their complaint accordingly; (3) **DENIES** USG's Motion to Dismiss the First Cause of Action on all other grounds presented by USG; and (4) **DENIES** USG's Motion to Dismiss the Second Cause of Action.

**IT IS SO ORDERED**

DATED: March 21, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Peter C. Lewis
United States Magistrate Judge

All Counsel of Record